

FILED

March 26, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 3:21 PM

## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE:** Tanya Louise Scott Dunlap  **DOCKET #: 2014-06-0054**

**EMPLOYER:** Elwood Staffing  **STATE FILE #: 83796-2014**

**INSURANCE CARRIER/TPA:** Zurich  **DATE OF INJURY: August 18, 2014**
**American Insurance Company/Gallagher**
**Bassett**

## EXPEDITED HEARING ORDER

  THIS CAUSE came before the undersigned Workers' Compensation Judge on March 24, 2015, upon the Request for Expedited Hearing filed by Tonya Louise Scott Dunlap (Ms. Dunlap), the Employee, on February 11, 2015, pursuant to Tennessee Code Annotated section 50-6-239 to determine if the Employer, Elwood Staffing (Elwood), is obligated to provide past temporary disability benefits. Considering the positions of the parties, the applicable law and all of the evidence submitted, the Court concludes that Ms. Dunlap is not eligible for the requested relief.

## ANALYSIS

### Issue

*Whether Ms. Dunlap is entitled to past temporary disability benefits.*

### Evidence Submitted

The Court admitted into evidence the exhibits below:

  Ex. 1: Medical records:
- American Family Care (Dr. Chowbey): Southeastern Imaging Group
- Petty Orthopedics (Dr. Petty)
- Advanced Ortho & Spine (Dr. Eby)
- Harding Medical Center (Dr. Wawa)
- Dr. Steven Graham, Neurology, P.C.
- Results Physiotherapy

  Ex. 2: Wage statement
  Ex. 3: FROI

1

Ex. 4: Form C-42, Choice of Physicians (Three forms)
Ex. 5: Certified copy of guilty plea, April 4, 2005
Ex. 6: Social Media, Tweet, December 28, 2014
Ex. 7: Status, Facebook (undated)
Ex. 8: Photograph of baked goods, Facebook, December 13, 2014
Ex. 9: Photograph of stacked envelopes, Facebook, February 16, 2015
Ex. 10: Grievance letter
Ex. 11: Associate Handbook
Ex. 12: Associate Handbook Acknowledgement, July 23, 2014.

The Court designated the following as the technical record:

- Petition for Benefit Determination, November 3, 2014
- Dispute Certification Notice, January 29, 2015
- Request for Expedited Hearing, February 11, 2015

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings and any attachments to them as allegations unless established by the evidence.

The following witnesses provided live, in-person testimony:
   o Ms. Dunlap
   o Melissa Dye.

**History of Claim**

Ms. Dunlap is a forty-eight (48) year-old resident of Rutherford County. She worked for Elwood as a warehouse associate. On August 18, 2014, a computer monitor fell on her head, resulting in injury to her head, neck and right shoulder. She verbally reported this to her on-site supervisor on the same day.

After continued discomfort from the injury, she sought unauthorized care from Dr. Fritz Wawa (Ex. 1, pp. 31-36). He referred her to an orthopedist (Ex. 1, p. 32). According to Ms. Dunlap, the orthopedist's staff told her she needed to return to her employer and file a workers' compensation claim before scheduling an appointment. Per the FROI, she reported the injury on October 22, 2014 (Ex. 3).

Elwood accepted the claim as compensable and offered an orthopedic panel on October 23, 2014 (Ex. 4). Ms. Dunlap selected Dr. Damon Petty, whom she saw on October 27, 2014 (Ex. 1, pp. 10-17). Dr. Petty assigned restrictions of no use of the right arm, but did not specify a timeframe (Ex. 1, p. 11).

Elwood offered an orthopedic/spine panel to evaluate Ms. Dunlap's head/neck/right shoulder injury, and on November 19, 2014, she selected Dr. James Eby (Ex. 4). Ms. Dunlap saw Dr. Eby on December 2, 2014 (Ex. 1, pp. 18-30). He diagnosed neck pain, headaches, right shoulder pain and cervical radiculitis (Ex. 1, p. 20). He continued treatment, and, over time, Dr.

Eby placed restrictions on use of her right arm to avoid lifting: more than ten (10) pounds on December 12, 2014 (Ex. 1, p. 24); more than twenty (20) pounds on January 23, 2015 (Ex. 1, p. 25); and more than twenty-five (25) pounds on February 27, 2015 (Ex. 1, p. 29). He placed her at maximum medical improvement (MMI) on February 27, 2015, and released her to return to work, full-duty, as of March 13, 2015 (Ex. 1, p. 30).

Elwood authorized a neurological evaluation. Ms. Dunlap saw Dr. Steven Graham on December 19, 2014 (Ex. 1, pp. 37-42), and continues to treat with him.

Melissa Dye, customer service manager for Elwood, testified that on October 6, 2014, Ms. Dunlap spoke to her about a verbal dispute with a co-worker. Ms. Dunlap informed Ms. Dye that the co-worker was being disrespectful. Ms. Dunlap told Ms. Dye that during the dispute, Ms. Dunlap "used the 'bitch' word" to the co-worker. Ms. Dunlap did not deny making this statement to Ms. Dye or that she used the word "bitch" in the verbal altercation. Ms. Dunlap submitted to Ms. Dye a copy of a letter she wrote and gave to Elwood's onsite manager that outlined her grievance with the co-worker (Ex. 12). As a result, Ms. Dye testified that Elwood terminated Ms. Dunlap for insubordination and violation of a policy within Elwood's associate handbook (Ex. 11, p. 3), which states:

> While on assignment, you are expected to exhibit common courtesies toward all individuals. In other words, you are expected to act and behave in a professional manner. Actions/behaviors in the workplace that are unprofessional include, but are not limited to: (1) using foul or offensive language… (7) violating any policies contained in this Associate Handbook; (8) insubordination.

Ms. Dye testified that a "zero tolerance" policy is in place, citing the handbook's provision that, "Elwood Staffing does not tolerate associate misconduct in any form" (Ex. 11, p.3).

Ms. Dye further testified that, had Ms. Dunlap remained employed, Elwood would have accommodated the restrictions. She detailed a number of clerical jobs available for light or "modified" duty associates that would fit the "no use of right arm" restriction, as well as the weight limitation restrictions. Ms. Dunlap testified that she returned to Elwood after her visit with Dr. Petty on October 27, 2014, and provided Ms. Dye with documentation regarding her restrictions, but that Ms. Dye informed her that she was no longer an employee.

During the period of time between the date of injury, August 18, 2014, and MMI, February 27, 2015, Ms. Dunlap confirmed that she pursued other employment and business opportunities. Between October 7 and October 17, 2014, she worked for Onin Staffing, which ultimately declined to accommodate her restrictions. Ms. Dunlap also operated a music production business, "Defy Gravity." On February 16, 2015, Ms. Dunlap posted a photo of a stack of envelopes on Facebook, bearing a caption that she had prepared the mailers (Ex. 9). She testified that this was for Defy Gravity. On redirect, Ms. Dunlap denied making any money from her self-employment.

On cross-examination, Ms. Dunlap acknowledged a guilty plea in Grays Harbor County,

Washington, on April 4, 2005, to charges of theft in the first degree and Medicaid false statement (Ex. 5). Elwood offered this proof to impeach the credibility of Ms. Dunlap under Rule 609 of the Tennessee Rules of Evidence.

## Ms. Dunlap's Contentions

Ms. Dunlap seeks temporary disability benefits from October 17, 2014, to March 13, 2015. She asserts that Dr. Wawa took her completely off work, while Drs. Petty and Eby restricted the use of her right arm. She also claims that Elwood wrongfully discharged her over a "small disagreement" in the workplace, involving a word that has become "common parlance," to avoid paying workers' compensation benefits. If not for the wrongful discharge, she would have worked light duty. She further contends that the Court should construe the Workers' Compensation statute liberally in favor of Ms. Dunlap.

## Elwood's Contentions

Elwood asserts that Ms. Dunlap is not entitled to temporary disability benefits because Elwood terminated her for cause. The policy was clear and nondiscretionary; Ms. Dunlap had notice of it; and she chose to violate it using inappropriate language. Moreover, Elwood had light-duty positions available, which Ms. Dunlap could have performed, in light of her ability to do clerical duties in pursuit of self-employment. Elwood argues that the statute should not be construed in favor of either party under Tennessee Code Annotated section 50-6-116.

## Findings of Fact and Conclusions of Law

### Standard Applied

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003). In a workers' compensation action, pursuant to Tennessee Code Annotated section 50-6-239(c)(6), the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. The employee must show the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13) (2014). The workers' compensation law shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor the employer. Tenn. Code Ann. § 50-6-116 (2014).

### Factual Findings

Ms. Dunlap sustained a work-related injury on August 18, 2014. Elwood accepted the claim as compensable. Dr. Eby, an authorized provider, placed restrictions upon the use of her right arm until her MMI date of February 27, 2015. Elwood properly terminated Ms. Dunlap for cause on October 6, 2014. Elwood had available light-duty work and could have accommodated Ms. Dunlap's restrictions, had she not been terminated.

4

*Application of Law to Facts*

*Ms. Dunlap is not entitled to any past temporary disability benefits.*

An employee is entitled to receive temporary partial disability benefits, pursuant to Tennessee Code Annotated section 50-6-207(2) (2014), when "the temporary disability is not total." *Stem v. Thompson Servs.*, 2011 Tenn. LEXIS 742, 27 (Tenn. Workers' Comp. Panel, July 26, 2011), citing 20 Reynolds § 14:4, at 213. An injured employee is not entitled to temporary disability benefits if terminated for cause and the employer was reasonably capable of providing modified duty within the restrictions assigned. To be excused from this obligation, the employer must demonstrate that the termination of employment involved a breach of the reasonable expectations of the employer and appears reasonably appropriate. In such cases, the employer is deemed to have made reasonable efforts to accommodate the employee's work restrictions and the Employee's work injury is not the reason why he is not returned to his former job. *See, generally, Carter v. First Source Furniture Group*, 92 S.W.3d 367, 371-372 (Tenn. 2002) (holding that, "an employer should be permitted to enforce workplace rules without being penalized in a workers' compensation case." *Id.* at 368).

In the case before the Court, the proof is clear that Ms. Dunlap violated the associate handbook with regard to her use of a label of a co-worker that is not "common parlance," but rather is inappropriate language. The associate handbook sets forth a reasonable expectation of employee behavior in the workplace and is reasonably appropriate. Ms. Dunlap did not dispute using the word nor did she contest that Elwood had multiple light-duty jobs available for her during the period of her restrictions from Drs. Petty and Eby. Accordingly, Ms. Dunlap's request for past temporary disability benefits is denied.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Dunlap's claim against Elwood and its workers' compensation carrier for the requested past temporary partial disability benefits is denied on grounds other than compensability.

2. This matter is set for Initial Hearing on May 13, 2015, at 9 a.m.

**ENTERED this the 26th day of March, 2015.**

**Kenneth M. Switzer, Chief Judge**
**Court of Workers' Compensation Claims**

5

<u>Initial Hearing</u>:

An Initial Hearing has been set with **Chief Judge Kenneth M. Switzer, Court of Workers Compensation Claims. You must call 615-532-9552 or toll free at 866-943-0025 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Clerk of Court shall submit the record to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

6

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 26th day of March, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| John Drake, Employee's attorney | | | | | | jddrakeatty@gmail.com |
| David Deming, Employer's attorney | | | | | | ddeming@manierherod.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims

7